IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY, | * * * | |
| Plaintiff, | * * | |
| v. | * * | 6:15-cv-66 |
| ENERGY SMART INSULATION COMPANY, INC. and JAMIE C. SHIVER | * * * * | |
| Defendants. | * * * * * | |

O R D E R

This case comes before the Court on Plaintiff's motion for default judgment. (Doc. 23.) For the reasons below, the Court **GRANTS** Plaintiff's motion.

I. **PROCEDURAL BACKGROUND**

On June 19, 2015, Plaintiff American Contractors Insurance Company ("ACIC") filed this suit against Defendants Energy Smart Insulation Company, Inc. ("ESI") and Jamie C. Shiver. The Complaint alleges that Defendants breached an indemnity agreement between the parties. Count I of the Complaint seeks specific performance of the indemnity agreement, Count II seeks damages for breach of the agreement, and Count III seeks damages

under a theory of common-law indemnity. Plaintiff's motion for default judgment only addresses damages for breach of contract.

On August 4, 2015, Plaintiff, in accordance with O.C.G.A. § 9-11-4(e), completed substituted service on ESI by serving the Secretary of State of the State of Georgia. (Doc. 9, Ex. 1.) After repeated attempts to serve Shiver, Plaintiff moved to serve him by newspaper publication under O.C.G.A. § 9-11-4(f). (Doc. 7.) The Magistrate Judge found that service by publication was appropriate and granted Plaintiff's motion. (Doc. 8.) Plaintiff served Shiver by publication in two printed advertisements in the Savannah Morning News on September 1 and September 15, 2015. (Doc. 15.)

Neither ESI nor Shiver responded to the Complaint. Upon Plaintiff's motion, the Clerk entered default against ESI on September 8, 2015. (Docs. 13-14.) After serving Shiver by publication, Plaintiff moved for entry of default against Shiver, which the Clerk entered on October 27, 2015. (Docs. 17-18.) Soon after, Plaintiff filed a motion for entry of default judgment against ESI. (Doc. 19.) With the Court's leave, Plaintiff later filed the present amended motion for entry of default judgment against both ESI and Shiver. (Doc. 23.)

2

## II. ANALYSIS

### A. Requirements for Default Judgment

Federal Rule of Civil Procedure 55(b) governs the Court's ability to grant a default judgment and vests the court with discretion to determine whether it should enter judgment. Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). "[A] Defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] A defendant, by his default, is only deemed to have admitted the "plaintiff's well-pleaded allegations of fact." Id. Three distinct matters are essential for the entry of default judgment: (1) jurisdiction; (2) liability; and (3) damages. Pitts, 321 F. Supp. 2d at 1356.

According to the Complaint, ACIC is a California corporation with its principal place of business in California, Shiver is a resident of Georgia, and ESI is a Georgia corporation with its principal place of business in Georgia. (Compl. ¶¶ 1-3.) Accordingly, this Court has personal

---

[1] In Bonner v. City of Prichard, 661 F.3d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the former Fifth Circuit's decisions prior to October 1, 1981.

3

jurisdiction over Shiver and ESI and subject-matter jurisdiction under 28 U.S.C. § 1332.

The Court discusses the remaining issues of liability and damages below.

**B.  Liability**

"Under O.C.G.A. § 13-3-1, the plaintiff in a breach of contract action has the burden of pleading and proving three elements: subject matter of the contract, consideration, and mutual assent by all parties to all contract terms." Broughton v. Johnson, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001). Additionally, "[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken." Budget Rent-a-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996). Under Georgia law, "ordinary rules of contract construction" apply to interpreting indemnity agreements, Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc., 518 F. App'x 899, 902 (11th Cir. 2013), and "where the language of a contract is definite and unambiguous, a court must give it effect." Reliance Ins. Co. v. Romine, 707 F. Supp. 550, 552 (S.D. Ga. 1989).

ACIC's Complaint concerns a General Indemnity Agreement between ACIC and ESI and Shiver in connection with a Bid Bond and a Payment and Performance Bond. (Compl. ¶ 8.) Shiver

4

executed the Indemnity Agreement in his capacity as CEO/President of ESI and individually. (Compl. ¶¶ 9-10, Ex. A at 6.) Generally, the Indemnity Agreement provides that ESI and Shiver jointly and severally agreed to "[i]ndemnify and hold [ACIC] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fee and expenses of whatever kind" arising from the Bid Bond and the Payment and Performance Bond. (Compl. ¶ 11, Ex. A ¶ 2.) The Indemnity Agreement also provides that, upon ACIC's demand, ESI and Shiver must deposit collateral security sufficient to protect ACIC from claims or potential claims. (Compl. ¶ 12, Ex. A ¶ 6.)

In consideration for the Indemnity Agreement, ACIC issued two bonds. (Compl. ¶ 13, Ex. B.) The first is a Pay and Performance Bond in connection with a construction project by the Housing Authority of the City of Claxton, Georgia. (Compl. 13, Ex B.) The second is a Bid Bond associated with roof repairs at a Glynn County, Georgia fire station. (Compl. ¶ 13, Ex. B.) ACIC has paid valid claims against ESI on each of these bonds. In particular, ACIC has paid claims of $2,137.50 on the Bid Bond and $75,390.61 on the Pay and Performance Bond. (Compl. ¶ 15.)

ACIC demanded that ESI and Shiver indemnify it for these claims as required by the Indemnity Agreement. (Compl. ¶ 16.) Additionally, on January 9, 2015, ACIC made a demand that ESI and Shiver provide $100,000 of collateral under Section 6 of the

5

Indemnity Agreement. (Compl. ¶ 16, Ex. C.) ACIC determined that its potential exposure under the Bonds included an additional $30,290.30, totaling a net loss of $105,680.91. (Compl. ¶ 16.) ESI and Shiver failed to indemnify ACIC or deposit the required collateral. (Id.)

The Court finds that the Indemnity Agreement constituted a valid and enforceable contract between ACIC, ESI, and Shiver. See, e.g., Anderson v. U.S. Fidelity & Guar. Co., 600 S.E.2d 712, 715 (Ga. Ct. App. 2004) (collecting cases where Georgia courts have "upheld the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds"). By failing to indemnify ACIC and to deposit the requested collateral, ESI and Shiver breached their obligations under the Indemnity Agreement.

C. **Damages**

As discussed above, ACIC entered into an Indemnity Agreement with ESI and Shiver in connection with the issuance of Bonds. The Indemnity Agreement includes the following particular losses against which ESI and Shiver agreed to jointly and severally indemnify ACIC:

> 2.1. Sums paid including interest thereon at the maximum rate allowed by law, or liabilities incurred in the settlement or the adjustment of any and all claims, demands, damages, costs, losses, suits, proceedings, or judgments;

6

> 2.2. Expenses paid or incurred in connection with claims, suits, or judgments under such Bonds;
>
> 2.3. Expenses paid or incurred in enforcing the terms of this Agreement;
>
> 2.4. Expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by Surety;
>
> 2.5. Expenses incurred in recovering or attempting to recover losses or expenses paid or incurred;
>
> 2.6. Attorney's fees and all legal expenses related to any items herein, including in-house attorneys' fees, costs and expenses; investigation, accounting or engineering services;
>
> 2.7. Premiums on Bonds issued by Surety on behalf of principal;
>
> 2.8. Monies advanced or loaned under this Agreement.

(Compl. ¶ 32, Ex. A ¶¶ 2.1-2.8.)

In the Indemnity Agreement, the parties agreed that "[i]n any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred or expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of [ACIC] . . . shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned." (Indemnity Agreement, Doc. 1 Ex. A § 3.4.) Accordingly, the parties agreed that affidavits constitute prima facie evidence of the "fact and extent" of loss under the Indemnity Agreement. See, e.g., Winmark Homes, 518 F. App'x at 903 ("By signing the indemnity agreement, the Winmark defendants

7

expressly agreed that computer printouts, verified by affidavit, would be prima facie evidence of the fact and amount of loss.")

As proof of their damages, Plaintiff provides the affidavits of John C. Yi and Nicholas Castricone, IV. Mr. Yi is Vice President, Bond Claims Director at HCC Surety Group and is "responsible for handling certain claims involving bonds issued by ACIC," including the claims at issue in this case. (Yi Aff., Doc. 23, Ex. 2 ¶ 3.) Mr. Yi is the custodian of records associated with the Pay and Performance Bond and Bid Bond discussed above. (Id. ¶ 4.) Yi explains that ACIC investigated the claims made against the Bonds and later made payments of $2,137.50 and $73,253.11 on those claims. (Id. ¶ 10.)

Yi also indicates that ACIC incurred other expenses in connection with the Bonds. To start, ACIC expended $9,412.30 to hire Colby Consulting, Inc. to investigate the Bond claim and advise ACIC. (Id. ¶ 9.) Additionally, ACIC engaged Thompson & Slagle, LLC to investigate the claims and negotiate tender and settlement agreements. For that matter, ACIC paid Thompson & Slagle $21,648.00. (Id. ¶ 11.) Thompson & Slagle also represents ACIC in this litigation, and ACIC has paid $13,595.00 in attorneys' fees and costs on this litigation. (Id. ¶ 12.) In his affidavit, Mr. Castricone, Plaintiff's lead counsel in these matters, confirms the attorneys' fees of $35,530.00. (Castricone Aff., Doc. 23 Ex. ¶ 8.) All told, Yi states that

8

ACIC expended at least $120,045.91 in claims, costs, and fees associated with the issuance of the Bonds. (Id. ¶ 13.)

The Court finds that, under the terms of the Indemnity Agreement, ESI and Shiver were obligated to indemnify ACIC for the $120,045.91 in losses described above. Accordingly, by failing to indemnity ACIC for those losses, ESI and Shiver breached the Indemnity Agreement and are jointly and severally liable for $120,045.91 in damages.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's amended motion for default judgment against ESI and Shiver. (Doc. 23.) The Court **GRANTS** Plaintiff's request for damages of $120,045.91. The Court **DIRECTS** the Clerk to **ENTER FINAL JUDGMENT** in favor of Plaintiff and against Defendants, terminate all deadlines and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this /5th day of June, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA